Good morning, Your Honor. As may it please the Court, my name is Robert Kohn for Kohn Law Group. Kohn Law Group has already recovered some of the money that APMM owes to NOAA Techs, but we still need the California Court to rule on the rest. And the reason why we is that the case in Mississippi has been dismissed, and that case is now closed. Well, have you asked the California Court to reopen the case? We have not asked the California Court. Why don't you just go to them and ask them to reopen it? So, you know, you enter the state until the conclusion of the Mississippi litigation. Mississippi litigation's over. Let's get back at it. No, the only reason for not doing that is that APMM is continuing to ask for what they call a clarification in Mississippi. So it's not closed? The Court in Mississippi has ruled that the case is closed. What's happening now... Right, so if there's a motion to reopen, that generally means that a case is not closed. Well, the motion to reopen continues to be pending. So until that's granted, the case is closed, and if it's granted, then the case would be reopened. I think the practical reason for not asking the California Court to lift the stay is that proceedings continue in Mississippi, even though the Court there has held that its case is closed. How long has that motion to reopen been pending, and why hasn't it been ruled on? I can certainly not answer as to why it has not been ruled on, except that it's under submission. The motion was filed on December the 5th, and it's been fully briefed now for, I want to say, about a month. I'm not sure the exact date when the final reply briefs were filed, but it's been about a month, maybe more. I can certainly check on that, but it seems like it's been since about Christmas. If the Court in Mississippi were to rule on the motion for clarification, and then say, this is done, and here's the final order, does that moot your appeal here? Well, I'm sure APMM would disagree that it does moot the appeal, because unless they choose to waive their right to appeal in Mississippi, they would say that they still could get what they're trying to get in Mississippi. They would still have the right to take an appeal to the 5th Circuit. They would. The motion for clarification... I thought they were discharged from that case. They were discharged from the case, and a discharge order is an interlocutory ruling. That could be considered a final judgment if that were certified as a final judgment, but it was not. Does anybody else involved in Mississippi have a right to appeal? At the moment, nobody can appeal, because the motion for clarification prevents that. Assuming that the District Court in Mississippi decides the motion for clarification, would anybody else have a right to an appeal? The only other parties are King Construction of Houston, so depending on how the ruling went down, if they were aggrieved by it, they could appeal. Noatex, also a party there, if Noatex were aggrieved by it, Noatex could appeal. So they reached a settlement, right? And the court approved the settlement? Noatex reached a settlement with King, and so as between themselves, they have settled. But they have also, as between themselves, made clear that neither one of them settles with APMM. But was there anything left for them to appeal in that case? Currently, no. However, if the ruling were to come down on APMM's motion for what it calls clarification, that somehow reinstated or enlarged the injunction, then they would be aggrieved by that, and they could appeal it. I mean, everything you've said just sort of makes me think that the District Court got it right in the first place, that they ought to let this at least get to a final resolution in Mississippi, and so the court in California at least knows what they're dealing with. I'm not sure how to respond to that. Which part of what the Mississippi... Well, I mean, you're saying that APMM, which is the company that owes money to Noatex, which is where you have your lien, has settled, or I mean, has tendered the money, there's been a settlement. Now the District Court here in California, I presume, will have to decide if it was a reasonable settlement. I don't know what your argument's going to be, but it seems to me that there ought to be some finality to Mississippi before you come back to California. Well, two points. One is the tendering of the money is a freighted concept, because there are two claims, and APMM tendered only one payment of money. There are two claims between APMM and Noatex? I thought there was only the $260,000, and then I guess there's some argument that APMM owes Noatex more, but I thought Cone only had the lien on the $260,000. Cone has no lien on the separate $260,000, which is claimed to be owed directly from King. King is the only one who ever claimed to be owed $260,000 at the beginning. At that time, Noatex was owed something less than $260,000. Eventually, they came to be owed something more than $260,000, and what APMM did was they withheld from Noatex the same dollar amount as what was being claimed by King. So this is why when we say the money, it really gets to the heart of the issue in Mississippi. Whether there was only one debt. So can you explain that underlying issue, so that I understood that APMM had, Noatex was the general contractor, and King was a subcontractor, and so did APMM have any direct relationship with King, or was it just owed money to Noatex, or what's the situation? It was quite a bit less clear than that. Initially, King was engaged to do certain very limited things on behalf of Noatex, but once they got on site at the factory for APMM, they started doing a lot of other things. One of their allegations is that actually, one of King's allegations is that actually they were working directly for APMM, and that they were owed money directly by APMM. Now in the alternative, covering its bases on this point, King did assert that it was owed money also by Noatex. That has been settled, but what has not been settled is that King is owed money directly by APMM. What difference does that make to you, because you don't have a lien against a King debt, you only have a lien against the Noatex debt. The difference is, or the impact is that there was no resolution in Mississippi as to whether the money deposited by APMM was half and half King-Noatex, all of it was King, all of it was Noatex, none of that was resolved vis-a-vis APMM, and that's why the court in Mississippi when it entered the dismissal, made the dismissal without prejudice. So the settlement agreement says otherwise, right? The lien of Cone Law doesn't encumber any additional debts? The lien of Cone Law only encumbers the debts owed to Noatex. What we're saying is that those debts have not been fully paid. Now obviously we got $130,000, and I think it's clear at least that APMM is entitled to credit for that, but we're not going to try to get that again. But another $130,000 went to King Construction and did not come to Noatex. So you're saying that APMM may have paid $130,000 of its $260,000 debt to Noatex, and then the other $130,000 that it paid into the court was its separate debt to King. Is that your theory? Well, my point is that that has never been determined. But yes, that is one possible way of looking at it, because the district court in Mississippi did not adjudicate that question on the merits. So that brings us back I think to sort of the ultimate question, which is, given the confusion, given all the proceedings that we've had in Mississippi, why should we allow a court in California to get into the middle of this thing before this is resolved, before the dust settles in Mississippi? That's exactly, I'm glad you raised that point. Simply, it's very much because we don't know what can happen in Mississippi. There have been many twists and turns that I don't think anybody would have anticipated at the time of the stay in this case to begin with. Sitting here today, we may anticipate it could go this way, it could go that way, we don't know. But what we do know is that it's uncertain. And when there's that kind of uncertainty, you cannot have a stay. Wouldn't that just engender greater uncertainty, to have two courts ruling on the same pot of money? Well, this of course is the critical question. Is it the same pot of money? Well, right, but how does it help to have two different judges possibly issuing contradictory orders at the same time? How could that possibly help the situation? Well, in a normal course, cases proceed to judgment. And whoever gets to a judgment first gets preclusion. Right, but we don't usually like having two courts dealing with the same matter, both trying to get to judgment at the same time and having a race. That's just unseemly. We try to have more order than that. That's why we have these doctrines. Yes, but those doctrines are limited only to situations where you can say at the outset that the judgment in one case is going to resolve the other case. If it only might resolve the other case, and it otherwise might not, then we don't allow the federal court to stay its hand because the case is otherwise... That's not the law, because that's why you have stays and you have status reports, because sometimes you know that what's going to happen in the other form is uncertain, because all the cases are going to be the same. And so sometimes it resolves it, sometimes you come back and you've got something left. That's not that unusual a situation. Well I think that actually the precedent from the Supreme Court is that it would be a serious abuse of discretion to enter a stay when that is uncertain. Unless you have that certainty, you should not enter the stay. There's a very heavy burden to getting the stay, and that burden is not met. It would seriously abuse the district court's discretion to grant a stay if that's uncertain. In this situation, how could a California court not be interfering with matters that are going on in Mississippi? It's very difficult for me to see how the California court could not be running interference. I think it basically comes down to the same situation in the Fifth Circuit case of Wood v. Citronelle. You have what might or might not be a valid case for interpleader, but the debtor, the debtor is usually the interpleader plaintiff and that's the situation here, but the debtor doesn't really make out exactly why or how the interpleader case is going to resolve the case. Yes it might, but as in the Wood v. Citronelle case, they didn't have a very good explanation of why. And I don't think there's a very good explanation of why APM is entitled to interpleader of two different debts. I mean, if it owes King Construction for all the different things that King was doing, and it also owes NOATEX for all the goods that NOATEX shipped from California to Mississippi, it should pay both. And there's never been a clear explanation of why that should not be the case. The only justification that used to exist for not paying NOATEX what NOATEX was owed was the stop notice attachment, but the stop notice attachment has been vacated. Are any of the parties involved here in bankruptcy? I'm a little confused as to why the subcontractor and the lawyer represented very successfully, NOATEX here, seem to be both competing for the same pot of money. I don't understand why the subcontractor isn't owed money and the lawyers aren't owed money. By the subcontractor, you mean King Construction. King Construction may very well be owed money, but we are not in competition with them because the debts are different. The money owed to King is not the same. NOATEX is not in bankruptcy. APMM is not in bankruptcy. No, APMM is wholly owned subsidiary of Toyota Motor Corporation and they got plenty of money. King Construction, as far as I know, is not in bankruptcy. So I guess the question is, if NOATEX owes Cone Law Firm $260,000 and it's only paid $130,000, why isn't Cone's action against NOATEX for the other $130,000? Cone could pursue that action against NOATEX, but I have not done that. I haven't sued my own client and NOATEX has not sued its own customer. APMM was a customer of NOATEX and they haven't sued APMM, but I've sued APMM because they're not my customer to recover money that is encumbered by my lien. I've also chosen not to sue my own client and I'm not required to do that because I'm allowed by the Uniform Commercial Code to go after APMM. I see I'm running low on time. I'd like to reserve. Yeah, I'll allow you to do so. Thank you, Mr. Cone. Thank you. Mr. Mathias? Good morning. May it please the Court, Michael Mathias, a Baker-Haas dealer for Apelli Auto Parts Manufacturing, Mississippi. I think counsel has really misstated the facts here. We are dealing with one sum of money, the $260,000 that was interpled with the Mississippi court. If we look at plaintiff's complaint filed in this case, paragraph one says APMM owes at least $260,410.15. I mean, that's a pretty exact amount. That's the amount that was interpled. To NOATEC, which this action seeks to collect for Cone Law, then if you go to paragraph 10, it alleges that APMM claims no interest in the $260,410.15 and has interpled it with the Mississippi court and attaches a copy of the interpleader complaint. So I think for counsel to claim here that we're dealing with different debts, different claims, is disingenuous. I think it isn't the theory that half of that money that was interpled erroneously went to pay APMM's separate debt to King. I mean, that's the theory as I understood it. Well, in the Mississippi District Court, NOATEC several times filed motions to have the interpleader case dismissed and all of the funds released to NOATEC. And all of those motions were denied. And in fact, the Mississippi District Court explicitly found that King Construction had an equitable lien against those interpled funds. And so the interpleader case has continued between NOATEC and King Construction to determine who's entitled to what portion of those interpled funds. Nobody in Mississippi, NOATEC has not filed any separate case against APM, claiming APMM owes it anything other than the funds that are subject to the interpleader. King Construction hasn't filed any separate case. I thought in the Silliman agreement, NOATEC's reserved the right to go after APMM for additional amounts. They did. Actually, both parties, as I understand it. I mean, we weren't a party to the Silliman agreement. APMM was discharged and dismissed from the interpleader action, I think in 2013, certainly much earlier in 2014 anyway. And the injunction was issued by the Mississippi District Court. So we weren't a party to the Settlement Agreement and had no control over what they said in the Settlement Agreement. It's our position that both NOATEC and King, I think probably at Mr. Cohen's behest, tried to retain claims, which we don't think they have, which we believe were discharged by the interpleader action, by the discharge of APMM by the District Court in the interpleader action. And that's really why we've gone, APMM has gone to the Mississippi District Court to seeking to reopen and to clarify. Well, to your knowledge, has either King Construction or NOATEC ever alleged the theory that I understand Mr. Cohen has told us is his theory of the case, which is that, as I understand it, King Construction goes on site of APMM as a subcontractor of NOATEC. While on site, APMM asks them to do some additional work that's outside of the scope, I'm kind of paraphrasing here as I understand this argument, but they ask them to do work outside the scope of the subcontractor agreement. So now King is owed $260,000 from NOATEC, or from somebody. They're owed $260,000. And they say, we have a lien against the money the APMM owes to NOATEC for the $260,000. And NOATEC says, well, no, you may have a lien for some of it, but you did some independent work. Get that directly from APMM. Has that theory ever been asserted that you're aware of? To my knowledge, it has not. And I think we're going way outside the record. No, I'm talking about what's in the record. In this case. To my knowledge, it has not. And certainly, King has not filed any kind of litigation against APMM claiming that it's owed anything. Has there been a demand that you're aware of against APMM to pay? Not that I am aware of. I mean, I guess you could impliedly say there's a demand in that settlement agreement. But until I saw the settlement agreement, I had absolutely no thought that anybody, either APMM or NOATEC, claimed anything besides the interpled funds. I'm not sure that I really have anything else to say. I mean, I think the district court got it exactly right. There is absolutely, makes no sense to litigate these claims here in California and to litigate these claims also in Mississippi. Once the Mississippi litigation is concluded, let's suppose that the time for appeal runs and nobody takes an appeal. What happens then? Then I think we're in the California court, and the California court needs to look at  Does it moot the appeal? Yes, I think it does. I think it moots the appeal, and I think we're in the California district court. The California district court has to look at what Mr. Cone's claims are, has to look at what the final judgments are in the Mississippi district court, and figure out for itself where the parties stand. But I think we're almost there, but I don't think we're quite there because the Mississippi district court decision, I guess, is not technically final at this point because of the pending motions and, I suppose, the possibility of appeal. And actually, also, there's one other issue, and I don't know where it stands. Mr. Cone, I believe, or Cone Law, had an appeal pending or a couple consolidated appeals pending in the Fifth Circuit with respect to the interpleader action, and I honestly don't know the status of those appeals, or I'm actually not even sure how they would or might affect what we're talking about today. But, I mean, I think that just, it all goes to show that the district court, in this case, got it right. There shouldn't be two courts at the same time dealing with these issues, possibly inconsistent decisions. We ought to wait a final decision in the Mississippi district court and then figure out in the California litigation how Mr. Cone's claims figure in with the final decision of the Mississippi court and where the parties stand. Unless the court has any other questions, I... No. Thank you, Mr. Mathias. Thank you. Mr. Cone, you have some time remaining and I have some questions for you. Okay. So, do you have appeals pending in the Fifth Circuit? Yes. Okay. And that is related to the litigation in Mississippi? Yes. We have appealed the injunction. The injunction was entered on March the 3rd, 2014, as an interlocutory ruling. Injunctions are appealable, so that was appealed. Related to that, there was an issue about arbitration. Arbitration orders that deny arbitration are also appealable. Those things are consolidated. In the Fifth Circuit, the status of them is that they are fully briefed, but APMM takes the position that the appeals to review the injunction, which is the same order that contains the discharge, have been rendered moot by the of the money from the registry fund. So, APMM's position, which Mr. Mathias was not aware of, is that the appeals of the injunction and discharge are moot. That has not been decided. Okay. And if you were successful on those appeals, what would happen? Then the interpleader case would be dismissed. I'm sorry, what would happen? The case for interpleader would be dismissed. Okay. And would that undo the settlement? No, because the settlement reserves out objections to the case for interpleader. If you prevail in the Fifth Circuit, then this case would go forward in California. True. Okay. Now, if you lose in the Fifth Circuit, what happens? It depends on how we lose, I guess. One possible way of losing is for the court in the Fifth Circuit to say, this was an entirely proper case for interpleader. All the money was owed to Noatex. It's all been distributed on account of debts owed to Noatex. None of it is attributable to debts owed to King Construction. And you're enjoined forever from what you're trying to do in California. So your appeals that are pending are interlocutory appeals? Yes. Okay. And they don't depend then on the resolution of the motions for clarification pending in the Mississippi District? I think they really kind of do at this point, because if the clarification is denied, as contrary to APMM's position, if that is denied, that wipes out the injunction. The whole reason why they're seeking clarification is that they say they need to establish that they still have the injunction, and also that it extends as far as the action here in California. That's not clear, according to them, and they're trying to make it clear. If the court doesn't give them that, and then they don't choose to take an appeal, then that probably would render moot what's going on, at least on the merits, in Mississippi. There's still issues relating to attorney's fees. Well, let me get some clarification then. You have a court judgment, or at least interlocutory order, that puts an injunction in place. You now have a settlement agreement that's not... Is it part of a judgment? No. So you have a side agreement that says you can litigate, but you have a court order that says you can't. So I guess the court order trumps the settlement agreement until it gets vacated, right? Well, I mean, yes, but no. Part of the reason is that there has been a subsequent order from the court after the injunction. The injunction said nobody can litigate relating to, quote, the interpleader fund, unquote, absent further order of this court. Now, there has been a further order of that court, which is to dismiss the entire case without prejudice. And this is the order which APMM feels they need to clarify as to whether or not they continue to have the injunction. But I would say we're not seeking to recover the, quote, interpleader fund. The money's already been distributed from the interpleader court. What we're trying to recover is the unpaid balance that was not distributed to NOATX. It's also been asserted by my opponent that he's not aware of a demand by King to be paid by APMM. The document called Laborers and Material Men's Lien and Stop Notice, which contained, in part, the stop notice attachment directed to the debts owed to NOATX, also contained what's called a Laborers and Material Men's Lien, which can only be filed to assert a claim directly against the owner of land. And that land is owned by APMM. And that land is described in that document by all of its meets and bounds as being owned by APMM. That is the demand against APMM directly. And then, of course, in the settlement agreement, King Construction says, we reserve our right to go after APMM. So in terms of this court's decision, you would like us still to go ahead and decide this case? Yes, and I would like you to reverse the stay. Okay, now, if we reverse the stay, then there's a chance, there may be a chance that the district court here in California will be running interference with the matters going on in Mississippi and pending before the Fifth Circuit. Well, there's several possible outcomes, but if that's a serious concern, the Mississippi court has it within its stroke of a pen to resolve that by granting the requested clarification to not only reinstate or establish the continued effect of the injunction, but also to make clear, as requested by APMM, that the injunction stops us from suing in California. If that were to happen, presto, the case in California is stayed, but not because of abstention or first-to-file doctrine. Exercise discretion, exercise here. Alternatively, if we were to affirm the district court here, then everything would just go on in Mississippi and the Fifth Circuit until all of that was resolved, and then you could come back to court here. Yes, and that could go on for quite a long time. And, okay, I think maybe that answers my questions. Right, I mean, it could go on for a long time, and then we don't know what would happen. And our obligation, the obligation of this court is to decide, is to review the decision of the district court to stay the proceedings in California as of the time the district court decided that, not in light of all of the subsequent actions. True enough, and as of that time, APMM was not able to show that the judgment in Mississippi would be dispositive here in California. They still can't show that. He said that he wants to have that sorted out by the district court, just not quite yet. My view is, whatever the preclusive effect is or may be from the Mississippi court, that's just a defense. Race judicata is a defense. Issue preclusion is a defense. Payment, that's a defense. These are defenses, and they should be decided on the merits. Is it not true, though, that you alleged in your complaint that you're owed $260,000 by virtue of your lien against no attacks, and that the same $260,000 is the subject of the interpleader action, a copy of which you attached to the complaint? Well, I did attach a copy of the interpleader complaint. However, at the time, there was no money held in any interpleader court. That's also alleged in the complaint because all the money had been put back to APMM. So if we're just looking at what had happened at that point, the money was in the hands of APMM. Now, I say the money. What I mean is the money that they tried to put in the court. That's a fact. That's a function of how the interpleader is actually going to be handled. But what the district court in California knew is that you claimed $260,000, and you also alleged that it was the subject of a state court interpleader action, which was later removed to federal court. Well, that is true. But I also made clear that the proposed amended complaint by APMM, which is part of the record here, was trying to do exactly what I'm saying they are trying to do. They're trying to take multiple obligations, including, but not limited to, this separate debt of $260,000 owed to King, and also all these other debts to all these other vendors, and mash them into one deposit. The deposit of the money that they say was owed to NOATX. Now, subsequently, they said, well, maybe it isn't owed to NOATX. Maybe it's not owed to NOATX at all. Maybe we don't owe NOATX anything because maybe, according to King Construction, the debts owed to NOATX are null and void. Now, if that were true, that the debts owed to NOATX were null and void, as King Construction said, and as APMM used as a basis for interpleader, then that would necessarily mean that the money in the registry deposit was owed to who? To King, right? Because it couldn't be owed to NOATX. So this is how I think you can see that King is asserting their own claim. They were trying to squeeze out NOATX by asserting their own claim. One last thing. I know I'm way over time, but my opponent said that there was an equitable lien, and that King Construction had asserted an equitable lien. The phrase, because the district judge, or excuse me, the magistrate judge had allowed that. The magistrate judge did not ever use the phrase equitable lien. The case of Sheik Creations from the En Bac Court of Appeals in Mississippi holds, there's no equitable lien. What the magistrate judge said is, there's an equitable right for King Construction to come in and compete for the deposit. And they tried to do that by showing, by attempting to show that NOATX was owed nothing. Not at all by attempting to impress a lien on what was owed to NOATX. That's a very important distinction because it illustrates that there's multiple obligations. Okay. I think that we understand your position. We appreciate the argument of both counsel. The case is ordered to be submitted.
judges: Melloy, Bybee, Ikuta